

IN THE

# Court of Appeals of Indiana

Nicholas Yrjo Nifadeff,

*Appellant-Defendant*



FILED

Jul 16 2026, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Historic Landmarks Foundation of Indiana, Inc.
d/b/a Indiana Landmarks,

*Appellee-Plaintiff*

---

July 16, 2026

Court of Appeals Case No.
25A-PL-2520

Appeal from the LaPorte Circuit Court

The Honorable Julianne K. Havens, Judge

Trial Court Cause No.
46C01-2105-PL-1044

---

**Opinion by Judge Mathias**
Judges Kenworthy and DeBoer concur.

**Mathias, Judge.**

[1] Nicholas Nifadeff appeals the trial court's judgment for Historic Landmarks Foundation of Indiana, Inc., d/b/a Indiana Landmarks ("Indiana Landmarks"), following a bench trial. Nifadeff raises four issues for our review, which we consolidate and restate as the following dispositive issues:

> 1. Whether the trial court's finding that Nifadeff expressed an intent to restore the property at issue is sufficient to show a "promise" under a theory of promissory estoppel.
>
> 2. Whether a prior decree of foreclosure entered against Indiana Landmarks with respect to the property at issue is res judicata as to Indiana Landmarks's purported current rights to that property.

[2] We reverse the trial court's judgment for Indiana Landmarks and remand with instructions to enter judgment for Nifadeff.

## Facts and Procedural History

[3] The Orr Mansion ("the Property") is a historic property located in LaPorte. In 1999, the then-owner of the Property, Dean White, entered into an agreement with Indiana Landmarks. Pursuant to that agreement, Indiana Landmarks provided White with a loan in the amount of $22,295 to be used for certain restoration at the Property. In exchange, White granted Indiana Landmarks a security interest on the Property to protect the repayment of his debt, which security interest the agreement labeled as a "Mortgage." Appellant's App. Vol.

2, p. 38. The agreement further granted Indiana Landmarks a "first right to purchase" the Property over subsequent bona fide purchasers. *Id.* at 40.

[4] In that same agreement, White also granted Indiana Landmarks certain protective covenants on the Property ("the Protective Covenants"). As relevant here, the Protective Covenants generally sought to restore and maintain the Property's historic appearance. In particular, the Protective Covenants state as follows:

> (a) <u>Restoration Plan.</u> Within ninety (90) days hereof, and before beginning restoration work, Declarant [White] shall submit to [Indiana] Landmarks a restoration plan. . . . [Indiana] Landmarks shall either approve or disapprove [of] the restoration plan within thirty (30) days . . . and any amendment thereto within fifteen days . . . .
>
> (b) <u>Restoration Work.</u> Within thirty (30) days following approval of the restoration plan, Declarant shall begin the restoration work . . . . The restoration work shall be completed no later than eighteen (18) months following approval of the restoration plan. . . .
>
> (c) <u>Maintenance.</u> Declarant shall maintain the exterior of the [Property] in a "first class condition" [with examples provided]. . . .

*Id.* at 38-39. The agreement also provided that the Protective Covenants "shall be binding on the parties . . . , their heirs, successors, and assigns, and run with the [Property], in perpetuity. . . ." *Id.* at 40. And the agreement permitted

Indiana Landmarks to seek injunctive and other relief as necessary to enforce its terms.

[5] Indiana Landmarks recorded the agreement on May 5, 1999, as instrument number 99-09876 in the Office of the Recorder of LaPorte County. Indiana Landmarks separately recorded the mortgage terms and conditions as instrument number 99-09878. White used his loan from Indiana Landmarks in accordance with an approved restoration plan and "did complete that work." Tr. Vol. 2, p. 17. However, there is no evidence that White repaid his debt to Indiana Landmarks or that Indiana Landmarks recorded any documentation that showed a release of its security interest against the Property.

[6] Subsequent to the execution and recording of his agreement with Indiana Landmarks, White obtained a mortgage on the Property through Bank One, N.A. In 2003, White defaulted on his note with Bank One, and Bank One initiated foreclosure proceedings. In an amended complaint in those proceedings, Bank One named Indiana Landmarks as a defendant and sought to have Indiana Landmarks "answer as to *any interest claimed*" in the Property, "including, *without limitation*," the "mortgage" recorded under instrument number 99-09878. Appellee's App. Vol. 2, p. 6 (emphases added; capitalization and bold font removed).[1] Further, although its interest in the Property was executed and recorded subsequent to Indiana Landmarks's interest, Bank One

---

[1] At the bench trial, the trial court took judicial notice of Bank One's amended complaint for foreclosure.

asked that a decree of foreclosure be entered in Bank One's favor "as a first and prior lien as against" Indiana Landmarks and all other defendants. *Id.* at 7.

[7] Indiana Landmarks responded in Bank One's foreclosure proceedings only by filing a document titled, "Disclaimer of Interest." Ex. Vol. 1, p. 236 (capitalization and bold font removed) ("the Disclaimer").[2] The Disclaimer provided in relevant part as follows:

> COMES NOW[ Indiana Landmarks] . . . and disclaims *any interest in and to the real estate described in that certain mortgage* recorded May 5, 1999[,] as Instrument No. 99-09878 in the Office of the Recorder of LaPorte County, Indiana; *said real estate and [Indiana Landmarks's] interest therein, being foreclosed upon in the pending cause of action*.

*Id.* (emphases added).

[8] Thereafter, the trial court entered a decree of foreclosure in favor of Bank One and against all defendants, including against Indiana Landmarks by way of a default judgment. The decree of foreclosure stated that Bank One was "entitled to have its mortgage . . . foreclosed as against the defendants" and that the Property was to be "sold on foreclosure" to pay Bank One its unpaid sums due under White's note. *Id.* at 239-40. The decree of foreclosure further expressly

---

[2] The parties stipulated to the admission of the Disclaimer at the bench trial.

provided that "all right, title, interest[,] and claim of the defendants . . . in and to said real estate shall be sold" at the foreclosure sale. *Id.* at 241.

[9] Bank One then purchased the Sheriff's Deed to the Property in December 2006. Bank One later transferred title to the Property, without notice to Indiana Landmarks, to David and Leah Peakes in 2007. In September 2009, the Peakeses transferred title to the Property, again, without notice to Indiana Landmarks, to William Jacobson and Diane Behnke. Jacobson and Behnke subsequently executed a note with Horizon Bank secured by a mortgage on the Property. They defaulted on that note, Horizon initiated foreclosure proceedings, and Horizon obtained the ensuing Sheriff's Deed to the Property. Indiana Landmarks was not a party to Horizon's foreclosure proceedings. In 2016, Horizon transferred title to the Property to Fannie Mae via quit-claim deed. Again, Indiana Landmarks was not given notice of the transfer of title.

[10] In early 2017, Nifadeff sought to purchase the Property, and he met with a real-estate agent representing Fannie Mae. That agent provided Nifadeff with a Purchase Agreement and accompanying addendum. The Purchase Agreement stated that any offer submitted by Nifadeff would be "contingent upon Indiana Landmarks['s] First Right to Purchase the [Property] within ten (10) days of written notice by certified mail of an accepted offer . . . ." *Id.* at 159.

[11] Nifadeff executed the Purchase Agreement, and Fannie Mae contacted Indiana Landmarks about its alleged right to purchase the property within ten days. Indiana Landmarks then contacted Nifadeff "to ensure that you as a buyer

understand the legal responsibilities" provided by the Protective Covenants "and the requirements to return the [P]roperty back to a proper level of repair." *Id.* at 12. Indiana Landmarks included an attachment that outlined eight "[i]mmediate" needs for restoration and two additional "[s]econdary" needs at the Property. *Id.* at 14.

[12] Nifadeff responded by email to Indiana Landmarks in relevant part as follows:

> Your concerns about the [Property] are quite understandable; it is in poor condition. I'd like to assure you that *my aim* about the [Property] is exactly the same as [Indiana] Landmarks['s]: to restore it to its original glory[] and keep it that way.
>
> * * *
>
> *You should expect from me*:
>
> - Detailed restoration plan, within 90 days after transaction is closed,
> - Completion of the listed exterior works, within 18 months after the approval of the restoration plan . . . .
> - As an extra, I will consider a complete restoration of chimneys . . . .
>
> I believe[ the] timeframe specified by [Indiana Landmarks] is realistic. I only hope to pick the right contractors who could deliver on time. . . .

*Id.* at 16 (emphases added; bold font removed).

[13]   Based on that email, Indiana Landmarks informed Fannie Mae that it would not purchase the property, and Nifadeff closed with Fannie Mae. Thereafter, Nifadeff did not submit a restoration plan with Indiana Landmarks. Instead, he made various repairs to the Property of his own accord.

[14]   In May 2021, Indiana Landmarks filed a complaint against Nifadeff. In its complaint, Indiana Landmarks alleged that, as the "Property's owner," Nifadeff was bound by the Protective Covenants, and his "fail[ure] to submit to Indiana Landmarks a restoration plan within 90 days" of his closing with Fannie Mae was a breach of the Protective Covenants. Appellant's App. Vol. 2, p. 33. Indiana Landmarks also alleged that Nifadeff had failed to maintain the Property in a first-class condition. Accordingly, Indiana Landmarks requested injunctive relief and specific performance to require Nifadeff to comply with its reading of the Protective Covenants. In his answer, Nifadeff alleged affirmative defenses of waiver and laches, which defenses were based on Indiana Landmarks's nonenforcement of its purported rights between Bank One's acquisition of the Sheriff's Deed and Nifadeff's ownership of the property.

[15]   In June 2022, the trial court held a hearing on Indiana Landmarks's request for a preliminary injunction. The essential dispute between the parties at that hearing was whether the two foreclosures "terminate[d] any vertical privity" of title between White and Nifadeff and whether, notwithstanding the termination of vertical privity, Nifadeff's 2017 email to Indiana Landmarks created an enforceable promise by Nifadeff to be bound by the Protective Covenants. *Id.* at 92. In May 2023, the trial court denied Indiana Landmarks's request for a

preliminary injunction without proper findings and conclusions, and our Court directed the trial court to enter proper findings and conclusions in support of its decision in accordance with Indiana Trial Rule 52(A). The trial court then entered an amended order in March 2024, nearly two years after the preliminary-injunction hearing. In its amended order, the court stated that, while Indiana Landmarks was likely to succeed on the merits of its promissory-estoppel argument, injunctive relief was nonetheless inappropriate.

[16] In June 2024, Indiana Landmarks moved for summary judgment.[3] In its brief in support of its motion, Indiana Landmarks argued, among other things, that the Protective Covenants were binding on Nifadeff because "[t]here is no evidence suggesting [a] lack of vertical privity" from White to Nifadeff. Pl's. Br. on Summary J., p. 25. Indiana Landmarks also included the transcript from the preliminary-injunction hearing in its designation of evidence.

[17] In response, Nifadeff designated the Disclaimer, the decree of foreclosure for Bank One, and Bank One's ensuing Sheriff's Deed. Nifadeff argued that the designated evidence showed that Indiana Landmarks had released its rights to the Property and that the decree of foreclosure for Bank One and against Indiana Landmarks was res judicata. Indiana Landmarks did not object to Nifadeff's designated evidence, but it did file a reply brief in which it asked the trial court to not consider Nifadeff's release- and res-judicata arguments on the

---

[3] Nifadeff did not include the summary-judgment materials in his Appellant's Appendix. Nonetheless, they are a part of the Record on Appeal in accordance with Indiana Appellate Rules 2(E) and 2(L).

theory that he did not specifically allege them as affirmative defenses in his answer as required under Indiana Trial Rule 8(C).

[18] The trial court never ruled on Indiana Landmarks's motion for summary judgment or its request to not consider Nifadeff's release and res-judicata arguments. Instead, in August 2025, the trial court held a bench trial, and the parties presented testimony relevant to the promissory-estoppel and waiver/laches theories. The Disclaimer, Bank One's amended complaint for foreclosure, and Bank One's decree of foreclosure were also admitted into evidence without objection. In their closing statements, the parties expressly referenced the pending summary-judgment motion and arguments as well.

[19] Following the bench trial, the court entered judgment for Indiana Landmarks. The court's judgment does not mention the Disclaimer, the decrees of foreclosure, or the parties' summary-judgment arguments. Instead, the court found for Indiana Landmarks on its theory of promissory estoppel. In particular, the court found that, "[p]rior to buying the [Property], [Nifadeff] was made aware of the Protective Covenant[s] and made representations to [Indiana Landmarks] of *his intention* to submit a restoration plan . . . , which included *his intent* to complete all exterior work within 18 months after approval of the restoration plan . . . ." Appellant's App. Vol. 2, pp. 24-25 (emphases added). Based on those representations and Indiana Landmarks's ensuing decision to not purchase the Property, the court concluded that Nifadeff "is bound by all terms of the Protective Covenant[s]," and, "within ninety (90) days of this Court's Order of Judgment," he "shall . . . submit a detailed restoration plan" to

Indiana Landmarks for its approval, with no further alterations to the Property being permitted without that approval. *Id.* at 25-26.

[20] This appeal ensued.

## Standard of Review

[21] Nifadeff appeals the trial court's judgment for Indiana Landmarks following a bench trial. The trial court's judgment is supported by findings of fact and conclusions thereon. As our Supreme Court has made clear:

> Because the trial court entered findings of fact and conclusions of law, our review is for clear error under Trial Rule 52(A). *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). In conducting this review, we determine whether the evidence supports the court's findings and whether those findings support the court's judgment. *Id.* We do not reassess witnesses' credibility or reweigh evidence. *Id.* at 124. And we will reverse only if the findings lack factual support in the record or if the judgment applies the wrong legal standard to properly found facts. *Wysocki v. Johnson*, 18 N.E.3d 600, 603-04 (Ind. 2014).

*Norris v. Norris*, 275 N.E.3d 505, 509 (Ind. 2026). Further, for issues not covered by the trial court's findings, "we apply our general judgment standard, meaning we should affirm based on any legal theory supported by the evidence." *State ex rel. Dep't of Nat. Res. v. Leonard*, 226 N.E.3d 198, 202 (Ind. 2024) (quotation marks omitted).

## 1. The trial court's finding that Nifadeff's 2017 email reflected a statement of his intent is supported by the record; however, the trial court's conclusion that that finding supports a theory of promissory estoppel is contrary to law.

[22] On appeal, we first consider the trial court's stated rationale for its judgment for Indiana Landmarks.[4] The court's judgment concludes that, the Disclaimer and decrees of foreclosure apparently notwithstanding, Nifadeff represented to Indiana Landmarks a promise to be bound by the Protective Covenants; Indiana Landmarks detrimentally relied on his promise; and, thus, Nifadeff must now be bound by his promise.

[23] As Indiana Landmarks recognizes on appeal, the trial court's judgment is based in promissory estoppel. Our Supreme Court has held:

> a party asserting promissory estoppel must establish five elements: (1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise.

*Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007) (quotation marks omitted).

---

[4] Nifadeff argues on appeal that Indiana Landmarks's promissory-estoppel argument is not properly before us because Indiana Landmarks did not sufficiently plead that theory in its complaint. We conclude that Indiana Landmarks's promissory-estoppel argument has long been actually litigated between the parties, without objection, and we consider it accordingly.

We agree with Nifadeff that the representations he made to Indiana Landmarks in his 2017 email were not sufficient to demonstrate a "promise" under a theory of promissory estoppel. As we have explained:

> "A promise is a voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that *the promisor will perform* some action or refrain from some action in the future." *Woodall[ v. Citizens Banking Co.]*, 507 N.E.2d [999,] 1000 [(Ind. Ct. App. 1987), *trans. denied*], *quoting* J. Murray, *Murray on Contracts*, 2-3 (2d [e]d. 1974). Although no special form of words is necessary to create a promise, *the mere expression of an intention is not a promise. Security Bank[ & Trust Co. v. Bogard]*, 494 N.E.2d [965,] 968-69 [(Ind. Ct. App. 1986)]. Nor does a prediction, opinion, or prophecy constitute a promise. *Id.*

*Medtech Corp. v. Ind. Ins. Co.*, 555 N.E.2d 844, 847 (Ind. Ct. App. 1990) (emphases added), *trans. denied*.

Likewise, the United States Court of Appeals for the Seventh Circuit, considering Indiana law, has concluded that "the promise relied on to trigger an estoppel must be definite in the sense of being *clearly a promise and not just a statement of intentions . . . .*" *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 702 (7th Cir. 2004) (citing *Sec. Bank & Trust*, 494 N.E.2d at 968-69) (emphasis added); *see also Minturn v. Monrad*, 64 F.4th 9, 15 (1st Cir. 2023) ("The case law strongly favors" the conclusion that precatory language that "'indicates an expectation or intention'" is not "'a promise'") (quoting *Hansen v. Catsman*, 123 N.W.2d 265, 267 (Mich. 1963), and also citing *Sec. Bank & Trust*, 494 N.E.2d at 969).

Here, Nifadeff's 2017 email to Indiana Landmarks stated that it was his "aim" to restore the Property to its "original glory." Ex. Vol. 1, p. 16. He then stated that Indiana Landmarks "should expect" him to provide Indiana Landmarks with a restoration plan within ninety days of his closing and completion of exterior work within eighteen months of the approval of the restoration plan. *Id.*

The trial court correctly found that Nifadeff's statements concerned "his *intention* to submit a restoration plan" and "his *intent* to complete all exterior work." Appellant's App. Vol. 2, pp. 24-25 (emphases added). But the court then incorrectly concluded that those statements were sufficient to establish a promise under a theory of promissory estoppel. They were not. Again, the mere expression of an intention is not sufficient to establish a promise under a theory of promissory estoppel. *Sec. Bank & Trust*, 494 N.E.2d at 968-69. Accordingly, the trial court's conclusion for Indiana Landmarks is not supported by its findings, and the court's judgment is therefore clearly erroneous.[5]

## 2. The decree of foreclosure for Bank One is res judicata against Indiana Landmarks.

Having concluded that the trial court's stated rationale for its judgment on behalf of Indiana Landmarks is contrary to law, we thus turn to whether the

---

[5] Indiana Landmarks also asserts that Fannie Mae's Purchase Agreement somehow "reestablished" the Protective Covenants. Appellee's Br. at 32. We cannot agree. The Purchase Agreement simply shows that Fannie Mae would provide Indiana Landmarks with an opportunity to purchase the Property over Nifadeff. Such a showing is not a promise by Nifadeff to be bound by the Protective Covenants, nor is it a concession by him that Indiana Landmarks had any enforceable rights under its agreement with White.

trial court's judgment might be sustainable as a general judgment. *See, e.g.*, *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.* (quotation marks omitted). We conclude that the trial court's judgment for Indiana Landmarks is contrary to the evidence and is not sustainable as a general judgment.

[29] We find Nifadeff's argument under the doctrine of res judicata both persuasive and decisive. But we initially acknowledge Indiana Landmarks's argument on appeal that, contrary to Indiana Trial Rule 8(C), Nifadeff did not raise the issue of res judicata as an affirmative defense in his answer and instead raised it for the first time in his response on summary judgment. According to Indiana Landmarks, Nifadeff's failure to raise res judicata as an affirmative defense in his answer results in his waiver of that defense.

[30] On this record, we cannot agree. "Even though Indiana Trial Rule 8(C) generally requires responsive pleadings to raise affirmative defenses, trial courts may exercise their discretion and entertain affirmative defenses that are not raised in a responsive pleading." *Shakur v. Hendrix*, 234 N.E.3d 194, 203 (Ind. Ct. App. 2024). Indeed, Indiana Trial Rule 15(B) provides that, even where, as here, a party objects to an untimely raised affirmative defense, the trial court

> may allow the pleadings to be amended and shall do so freely
> when the presentation of the merits of the action will be
> subserved thereby and the objecting party fails to satisfy the court
> that the admission of such evidence would prejudice him in
> maintaining his action or defense upon the merits. The court may

grant a continuance to enable the objecting party to meet such evidence.

[31] Here, while the trial court neither ruled on Indiana Landmarks's objection nor directed the pleadings to be amended, the court did have the parties proceed to a final evidentiary hearing and final judgment several weeks after Nifadeff first raised his res-judicata argument; Indiana Landmarks never disputed the evidence underlying that argument; and the parties actually litigated the legal effect of Bank One's decree of foreclosure over several years. We thus conclude that Indiana Landmarks had sufficient notice of Nifadeff's affirmative defense and opportunity to respond to it, and Indiana Landmarks has not demonstrated that our consideration of that defense is inconsistent with how the parties actually proceeded in the trial court.

[32] Turning to Nifadeff's argument, our Supreme Court has stated that the doctrine of res judicata requires: "(1) a former judgment rendered by a court of competent jurisdiction; (2) a former judgment rendered on the merits; (3) the opportunity for the matter to have been determined in a prior suit; and (4) the same parties or their privies" in the current action. *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, 253 N.E.3d 1109, 1110 (Ind. 2025) (per curiam) (quotation marks omitted). There is no question here that the trial court's decree of foreclosure for Bank One satisfies the first requirement.

[33] As for the second and third requirements, the undisputed evidence before the trial court at the bench trial included Bank One's amended foreclosure complaint against Indiana Landmarks and Indiana Landmarks's corresponding

Disclaimer. In the amended complaint, Bank One expressly sought to have Indiana Landmarks, a named defendant, "answer as to *any interest claimed*" in the Property, "including, *without limitation*," the "mortgage" recorded under instrument number 99-09878. Appellee's App. Vol. 2, p. 6 (emphases added; capitalization and bold font removed).

[34] In response, Indiana Landmarks filed the Disclaimer, which, again, stated:

> COMES NOW[ Indiana Landmarks] . . . and disclaims *any interest in and to the real estate described in that certain mortgage* recorded May 5, 1999[,] as Instrument No. 99-09878 in the Office of the Recorder of LaPorte County, Indiana; *said real estate and [Indiana Landmarks's] interest therein, being foreclosed upon in the pending cause of action.*

Ex. Vol. 1, p. 236 (emphases added). Indiana Landmarks did not otherwise respond to Bank One's complaint, and the trial court entered default judgment against Indiana Landmarks in its decree of foreclosure for Bank One. And the decree of foreclosure expressly provided that "all right, title, interest[,] and claim of the defendants . . . in and to said real estate shall be sold" at the foreclosure sale. *Id.* at 241.

[35] We conclude that those undisputed records demonstrate that Indiana Landmarks had full opportunity for the scope of its rights in and to the Property, including its rights through the Protective Covenants, to be determined in Bank One's foreclosure action, and the court's decree of foreclosure was a judgment on the merits of those rights. Bank One sought to discern what rights, if any, Indiana Landmarks may have had in and to the

Property. Bank One's request identified Indiana Landmarks's mortgage instrument, but Bank One's request was expressly *not* limited to that instrument. Likewise, Indiana Landmarks's Disclaimer identified its mortgage instrument, but Indiana Landmarks disclaimed "any interest in and to *the real estate described*" in that instrument. *Id.* at 236 (emphasis added). Even if the Disclaimer could be construed in multiple, reasonable ways, the trial court's ensuing decree of foreclosure in favor of Bank One made clear that the foreclosure sale would result in the termination of "all right, title, interest[,] and claim" held by Indiana Landmarks "in and to said real estate . . . ." *Id.* at 241.

[36] We thus reject Indiana Landmarks's attempt to restore, through Nifadeff, the rights that the trial court unambiguously terminated in the decree of foreclosure for Bank One, which rights included the Protective Covenants. When Bank One purchased its Sheriff's Deed, that deed, in accordance with the plain language of the decree of foreclosure, represented clean title to the Property. And, as Nifadeff's title has followed from Bank One's acquisition of that deed, we likewise conclude that Nifadeff's role in the instant litigation is as Bank One's privy, satisfying the final element of his res-judicata defense. *See Chemco Transp., Inc. v. Conn*, 527 N.E.2d 179, 182 (Ind. 1988) ("A '[p]rivy' is one who after rendition of the judgment has acquired an interest in the subject matter affected by the judgment.") (quoting *Smith v. Midwest Mut. Ins. Co.*, 154 Ind. App. 259, 269, 289 N.E.2d 788, 793 (1972)).

[37] Accordingly, we hold that the undisputed evidence demonstrates that Indiana Landmarks's rights in and to the Property were foreclosed upon in the trial

court's decree of foreclosure for Bank One, and the decree of foreclosure, entered against Indiana Landmarks, prevents Indiana Landmarks from now litigating the rights it lost in that prior proceeding. We therefore also conclude that, insofar as the trial court's judgment for Indiana Landmarks might be considered a general judgment, it is contrary to the evidence.

## Conclusion

[38] For all of these reasons, we reverse the trial court's judgment for Indiana Landmarks and remand with instructions for the court to enter judgment for Nifadeff.

[39] Reversed and remanded.

Kenworthy, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Bradley J. Adamsky
Drayton, Biege, Sirugo & Elliott, LLP
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Amber M. Neal
Jacob T. Palcic
Barnes & Thornburg LLP
South Bend, Indiana